UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KEVIN L. H.,[1]          )
                         )
        Plaintiff,       )
                         )
    v.                   )   No. 1:19-cv-01741-MJD-JRS
                         )
ANDREW M. SAUL,          )
                         )
                         )
        Defendant.       )

**ENTRY ON JUDICIAL REVIEW**

Claimant Kevin L. H. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d).

**I.  Background**

On August 25, 2015, Claimant filed an application for SSI, alleging disability beginning September 28, 2006.[2]  [Dkt. 6-5 at 2.]  Claimant's application was initially denied on December

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] The parties set forth Claimant's medical background in their briefs. [*See* Dkt. 8 at 5 & Dkt. 15 at 2.]  Because these facts involve Claimant's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate only specific facts as needed below.

4, 2015, [Dkt. 6-3 at 14], and again upon reconsideration on April 7, 2016. *Id.* at 28. Administrative Law Judge Genevieve Adamo ("ALJ") held a hearing on Claimant's application on March 26, 2018. [Dkt. 6-2 at 47.] On June 13, 2018, the ALJ issued her determination that Claimant was not disabled. *Id*. at 41. The Appeals Council then denied Claimant's request for review on February 26, 2019, *id*. at 2, which made the ALJ's decision the final decision of the Commissioner. Claimant then timely filed his Complaint in this Court seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II.  Legal Standard

To be eligible for Supplemental Security Income, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis:  (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 416.920. Before continuing to step four, the ALJ must assess the

claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2007). This Court may not reweigh the evidence or substitute its judgement for that of the ALJ, but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and there was substantial evidence supporting the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Barnett*, 381 F.3d at 668 (quoting *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003)). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006). While the ALJ must base her decision on all of the relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and must provide some glimpse into her reasoning to "build an accurate and logical bridge from the evidence to her conclusion," she need not "address every piece of evidence or testimony." *Dixon,* 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the application date of April 27, 2015.  [Dkt. 6-2 at 31.]  At step two, the ALJ determined that Claimant had the following severe impairments: closed displaced fracture of the shaft of the right clavicle; closed fracture of the shaft of the fibula; degenerative disc disease of the cervical spine; depressive disorder; and personality disorder.  *Id.*  At step three, however, the ALJ found that Claimant "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.* at 32.  In making this determination, the ALJ considered Listings 1.04 (disorders of the spine), 1.06 (fracture of the femur), 12.04 (depressive, bipolar, and related disorders), and 12.08 (personality and impulse-control disorders).  *Id.*

The ALJ then analyzed Claimant's residual functional capacity ("RFC") and concluded that he had the RFC to perform light work, except:

> [N]ever climbing ladders, ropes or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; should avoid hazards such as unprotected heights and dangerous moving machinery; able to understand, carry out, and remember simple, routine, repetitive tasks with no production rate pace and with only occasional simple work-related decisionmaking; can maintain attention and concentration for two-hour intervals; could respond appropriately to occasional changes in the workplace; could have occasional interaction with supervisors apart from what is necessary for general instruction, task completion, or training; occasional interaction with coworkers; no tandem tasks; no interaction with the general public; could have occasional overhead reaching with the dominant upper extremity; frequent handling and fingering with the dominant upper extremity; frequent movement of the neck; and frequent exposure to extreme cold and wetness.

*Id.* at 34.  In determining the RFC, the ALJ concluded that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these

4

symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 35.

At step four, the ALJ found Claimant was unable to perform his past relevant work as a hand packager, groundskeeper, and laborer. *Id.* at 39. The ALJ proceeded to step five, considering testimony from a vocational expert ("VE") who indicated that an individual with Claimant's age, education, work experience, and RFC would be able to perform several jobs that exist in significant numbers in the national economy, such as a routing clerk, folding machine operator, and mail clerk. *Id.* at 40. Based on these findings, the ALJ concluded that Claimant was not disabled. *Id.* at 41.

## IV. Discussion

The central issue is whether substantial evidence supports the ALJ's determination that Claimant is not disabled. Claimant asserts two arguments for reversing the ALJ's decision: (1) the ALJ failed to properly address Social Security Rule 16-3p and ignored Claimant's subjective symptoms; and (2) the ALJ failed to build an accurate and logical bridge for her RFC determination. Both arguments are addressed, in turn, below.

### A. Claimant's Subjective Statements

Claimant contends that the ALJ's conclusion that "claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record," [Dkt. 6-2 at 35], fails because the ALJ ignores Claimant's subjective symptoms. The Court agrees.

Under Social Security Rule 16-3p, "[the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." Social Security Rule 16-3p at *3. Once

established, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*

Social Security Rule 16-3p, which rescinded Social Security Rule 96-7p on March 28, 2016, requires that the ALJ assess a claimant's subjective symptoms, but not his credibility. *Id.* at *2. The "change in wording is meant to clarify that [ALJ's] aren't in the business of impeaching claimants' character; obviously [ALJ's] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting that an ALJ erred in "her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests"). At stage two of the Social Security Rule 16-3p analysis, the ALJ considers the Claimant's alleged symptoms in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3).

The following is the only explanation given by the ALJ for her rejection of Claimant's statements:

> The claimant's conservative treatment and noncompliance with recommended treatment suggests that his impairments are not as severe as he alleges. While the claimant takes prescription medication and attended physical therapy, he has not reported any additional treatment for his impairments, including continued physical therapy, use of a TENS unit, nerve blocks or surgery. In addition, he was noncompliant with physical therapy appointments. Moreover, there is no indication in the record that the claimant's treating physicians have recommended any greater treatment modalities. The claimant's conservative treatment suggests that his physical pain is not as severe as he alleges.

[Dkt. 6-2 at 37.] The ALJ concluded that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 35.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012)). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

According to the 2015 Disability Determination Explanation conducted by the State Agency medical consultants, Dr. M. Brill and Dr. William A. Shipley, when Claimant filed his initial application on April 27, 2015, he alleged that he could no longer work due to his bipolar disorder with psychotic features, panic disorder with agoraphobia, and antisocial personality disorder. [Dkt. 6-3 at 2.] Claimant reported in his 2015 Function Report that his mental impairments resulted in problems with his memory, completing tasks, concentration, and his ability to get along with others. [Dkt. 6-6 at 36.] In the Function Report, Claimant reported that his foot and back injuries impacted his ability to lift, bend, stand, and walk. *Id.* at 58. On March 26, 2018, Claimant testified that he had trouble with raising his arms above his head when getting dressed due to his neck pain, stating that he tries "to wear buttoned up shirts because it's easier to put on than something over the top of [his] head like a sweatshirt." [Dkt. 6-2 at 63-64.]

Claimant testified that his neck pain caused problems and stated, "if I go to look to the right, I turn my body." *Id.* at 72. Claimant testified that he has headaches that interfered with his ability to function approximately two to three times per week, and when asked what he does for relief, Claimant stated, "I take a strap that I had in my house robe and tie it real tight around my head and take medicine, my pain medicine and then I'll lay down." *Id.* at 74. Claimant testified that due to his back and foot pain, he is unable to perform a job that required either sitting or standing for two hours without lying down, even with a ten-to-fifteen-minute break. *Id.* at 69. Claimant testified that he had lost jobs due to his interactions with supervisors and coworkers. *Id.* at 77. Claimant additionally reported that he suffered from nervousness and mood swings. [Dkt. 6-9 at 20.] On October 4, 2017, in the Physical Therapy Progress Note & Plan of Care report, Claimant stated that his pain was aggravated when he sleeps, and that coughing and sneezing increased his neck pain. [Dkt. 6-14 at 42.] Claimant further opined that he tried to brace his neck when he sneezed, and that he used heat to relieve these factors. *Id.* In the 2015 Mental Status Examination, Claimant reported that he feels paranoid and that he boarded up his windows with little slots in them so that he can peek out. [Dkt. 6-9 at 21.] The ALJ failed to address any of the above testimony regarding the limitations of Claimant's subjective symptoms when drawing her conclusion.

      Claimant also argues that the ALJ impermissibly misstates the limitations he has in conducting his daily living activities in her "paragraph B" analysis of the mental disorders listings by stating that Claimant is "able to watch movies, collect new[s] clippings, read, shop in stores, and use public transportation." [Dkt. 8 at 4, 19.] The Seventh Circuit has previously explained that "a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time."

8

*Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Claimant testified that he does not have a driver's license and he suffers an anxiety attack every time he gets on a bus, stating it "restricts [his] breathing," and makes his "heart race[ ] real bad." [Dkt. 6-2 at 52, 78.] Claimant testified that he only goes to the store when he has to, and that he tries to "either get there early or later when there's not as many people out." *Id.* at 59. Claimant testified that he does not like crowds because he feels that people want to harm him. *Id.* at 77. Claimant further testified that he has a history of incarceration for being in "fights and things of that nature," and that his efforts to avoid those situations contribute to him staying at home. *Id.* at 79. The ALJ failed to address any of this testimony when explaining her RFC determination.

      Finally, Claimant argues that the ALJ's analysis suggesting that his impairments are not as severe as he alleges due to his conservative treatment history and noncompliance with recommended treatment is unsound. If an individual's symptoms are inconsistent with the evidence in the record on the basis that the frequency or extent of the treatment sought is not comparable with the degree of the individual's subjective complaints, the ALJ is required to consider the possible reasons the individual did not comply with treatment or seek treatment consistent with the degree of his complaints. *See* Social Security Rule 16-3p; *Thomas v. Colvin*, 534 F. App'x 546, 552 (7th Cir. 2013) ("an ALJ must consider reasons for a claimant's lack of treatment (such as an inability to pay) before drawing negative inferences about the claimant's symptoms."). When the ALJ rejects the explanation for a claimant's noncompliance with treatment, the ALJ must explain why the explanation provided is invalid. *See Myles*, 582 F.3d at 677. Additionally, "the agency has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment." *Roddy*, 705 F.3d at 638. Although the ALJ questioned Claimant about whether his neck and spine specialists provided assistance in reducing

9

his neck and back pain, [Dkt. 6-2 at 61], the ALJ failed to examine all of the relevant record evidence in her explanation as to why Claimant's conservative treatment and noncompliance was unjustified.

According to the 2012 Department of Correction report, Claimant took medication to decrease his mental illness symptoms while he was incarcerated between 2007 and 2012, and that upon his release, Claimant scheduled to follow-up with Meridian Mental Health Center. [Dkt. 6-15 at 5.] According to the Progress Note from Meridian Services on July 24, 2015, Claimant asked his therapist, Dr. Maria Willey, if he had been referred to a psychiatrist, and stated that he "needs meds," to which the therapist stated that he was on a waiting list due to the great demand for services. [Dkt. 6-10 at 28.] Dr. Willey noted that Claimant had refused to pay for rendered services, and when asked about it, Claimant stated, "I don't have money. I have $2 in my pocket right now." *Id.* When Claimant was asked by the ALJ if seeing a counselor at Meridian Services helped his mental health, Claimant testified, "it seemed to help me talk with somebody," but that he "had to build the trust issue back up with each counselor" because he was rarely able to see the same counselor each time. [Dkt. 6-2 at 58.] When asked if he was seeing a psychiatrist, Claimant stated, "I was at the Meridian Service and then they turned against me and they turned me in to the Atlas Collection for some money that I owed, and I think they're out to conspire in with them as well." *Id.* at 56. Claimant further opined that he had unpaid bills at Meridian Services, and that "they're out to get me for some money and I thought my insurance was taking care of it. And they never told me any different." *Id.* at 76. Claimant further stated, "I got into it with the psychiatrist because I felt like he was trying to take over control of my mind and the way I persee [phonetic] where I was seeing things." *Id.* Claimant noted that he had missed physical therapy appointments due to the weather, lack of transportation, and pain. [Dkt.

6-6 at 90.] Additionally, Claimant testified that he could not afford to visit a doctor for his foot injury. [Dkt. 6-2 at 61-62.] The ALJ failed to discuss why she rejected the record evidence that provides an explanation for Claimant's noncompliance with treatment for his disabling mental limitations and physical limitations.

The ALJ also impermissibly infers that because there is no indication in the record that Claimant's treating physicians have recommended any greater treatment modalities, Claimant's symptoms are not as severe as he alleges. [Dkt. 6-2 at 37.] The ALJ further reasoned that "[Claimant] has not reported any additional treatment for his impairments, including continued physical therapy, use of a TENS unit, nerve blocks or surgery." [Dkt. 6-2 at 37.] The Seventh Circuit has repeatedly held that the ALJ "may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012) (citations omitted); *see also Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (noting that the ALJ's conclusion unsupported by medical evidence amounted to her improperly "playing doctor"). Claimant was first prescribed Gabapentin and referred to physical therapy for his neck pain on September 11, 2017. [Dkt. 6-12 at 21.] After multiple sessions of physical therapy that provided him no relief, Claimant's physician increased his dosage of Gabapentin and scheduled him to see a neurosurgeon on February 26, 2018. *Id.* at 4. Claimant noted that he withstood physical therapy long enough to realize that it was not going to be effective enough to dismiss the pain. [Dkt. 6-6 at 88.] Claimant testified that he is currently waiting to have injections in his spine, but that he must go back to the doctor twice before they will do the injections on April 3, 2018. [Dkt. 6-2 at 57.] Claimant has clearly tried all options for remediation of his pain and is still making continuous efforts to treat his symptoms. The ALJ points to no medical evidence in the record that suggests how continued physical therapy, use of a TENS unit, nerve blocks or

11

surgery would alleviate Claimant's disabling pain. The ALJ failed to examine relevant record evidence when concluding that Claimant's conservative treatment history indicates that his symptoms are not as severe as he alleges. *See Thomas v. Colvin*, 534 F. Appx. 546, 551–52 (7th Cir. 2013) (rejecting an ALJ's explanation that the claimant's "conservative treatment" was not what "one would expect" for someone with disabling pain, where the claimant had made "continuous efforts" to treat her back pain).

For all of these reasons, the ALJ failed to consider and analyze the relevant factors when evaluating Claimant's allegations of his disabling subjective symptoms. This failure should be remedied on remand.

### B. RFC Assessment

Claimant contends that the ALJ's RFC determination is flawed because she "failed to sufficiently articulate the assessment of the evidence to assure us that [s]he considered the important evidence and to enable us to trace the path of reasoning." [Dkt. 8 at 26.] Claimant further contends that, due to this failure, the hypothetical question posed to the VE is fundamentally flawed, and that the ALJ's decision that Claimant can adjust to other work in the economy cannot stand. *Id.* at 4.

An individual's residual functional capacity is the most that they can still do despite their limitations. 20 C.F.R. § 416.945. The ALJ will assess a claimant's residual functional capacity based on all the relevant evidence in the case record, including descriptions and observations of claimant's limitations resulting from his symptoms, such as pain. *Id.* The ALJ "must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). The Court "cannot uphold an administrative decision that fails to mention highly pertinent

evidence." *Parker v. Astrue,* 597 F.3d 920, 921 (7th Cir. 2010). Additionally, the ALJ may not analyze only the evidence that supports her ultimate conclusion; if contrary evidence exists, the ALJ must confront it and explain why it was rejected. *Moore*, 743 F.3d at 1123.

> The ALJ concluded that Claimant had the RFC to perform light work, except:
>
> [N]ever climbing ladders, ropes or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; should avoid hazards such as unprotected heights and dangerous moving machinery; able to understand, carry out, and remember simple, routine, repetitive tasks with no production rate pace and with only occasional simple work-related decisionmaking; can maintain attention and concentration for two-hour intervals; could respond appropriately to occasional changes in the workplace; could have occasional interaction with supervisors apart from what is necessary for general instruction, task completion, or training; occasional interaction with coworkers; no tandem tasks; no interaction with the general public; could have occasional overhead reaching with the dominant upper extremity; frequent handling and fingering with the dominant upper extremity; frequent movement of the neck; and frequent exposure to extreme cold and wetness.

[Dkt. 6-2 at 34.] On February 15, 2018, Claimant reported to his treating physician, Dr. Murat Gonulalan, that his pain in his neck is "burning and sharp," and that he could not lift or turn his head. [Dkt. 6-12 at 3.] Claimant testified that he lost jobs due to his interactions with supervisors and coworkers. [Dkt. 6-2 at 77.] Claimant also reported that he suffered from nervousness and mood swings. [Dkt. 6-9 at 20.] Additionally, Claimant testified that he is unable to perform a job that required either sitting or standing for two hours without lying down, even if he was able to take a ten-to-fifteen-minute break. [Dkt. 6-2 at 69.] On the 2016 Psychiatric Assessment by Meridian Services, Claimant reported having a history of significant outbursts of anger. [Dkt. 6-10 at 7.] The ALJ failed to discuss this inconsistent evidence and articulate how these inconsistencies were considered when making her RFC determination and in the hypothetical question she posed to the VE. On remand, the ALJ should explain how she assessed the relevant evidence that is inconsistent with her RFC determination.

13

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings.

SO ORDERED.

Dated: 7 JUL 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.